No. 88–5806. NEELLEY *v.* ALABAMA. Ct. Crim. App. Ala. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting); *Furman* v. *Georgia*, 408 U. S. 238, 314 (1972) (MARSHALL, J., concurring), I would grant the petition for certiorari and vacate the death sentence in this case. Even if I did not hold this view, I would grant the petition to determine the applicable standard for reviewing *Brady* violations in the sentencing phase of a capital trial.

I

Petitioner Judith Ann Neelley was convicted of the capital offense of murder during a kidnaping. She did not deny that she had kidnaped and killed the victim. She testified, however, that she had acted at the direction and under the control of her husband, Alvin Neelley, who, petitioner contended, had physically and sexually abused her. Petitioner claimed that she was willing to do anything to avoid further abuse. A clinical psychologist

who had examined Neelley testified that she "'probably fits the battered women's syndrome to the most severe extent that [she had] seen.'" The psychologist noted that "'Alvin's mental state was substituted'" for petitioner's so that she had "'no intents of her own.'" *Neelley* v. *State*, 494 So. 2d 669, 681 (Ala. Crim. App. 1985).

To substantiate her defense further, petitioner's attorney sought disclosure of evidence seized by investigators from her mobile home—in particular, several letters petitioner sent to her husband. These letters contained references to her husband's "hypnotizing eyes" and the fact that petitioner had been hearing her husband's voice by mental telepathy. One letter also contained the suggestion that petitioner believed her letters might lead her husband to kill her. The prosecution denied that it had such letters and the trial court denied petitioner's request. The jury subsequently imposed a sentence of life without parole. Although the trial judge found that petitioner "was substantially influenced by her husband," he overruled the jury and sentenced petitioner to death. *Id.*, at 693.

After petitioner's conviction and sentence were affirmed on direct appeal, *Ex parte Neelley*, 494 So. 2d 697 (1986), her attorney learned that the investigator who had seized the letters did not deliver them to the appropriate law enforcement officials. Petitioner then filed a motion for relief from conviction and sentence, contending, *inter alia*, that the State's failure to disclose the seized evidence violated her due process rights. As a preliminary matter, a state court found that the investigator's failure to disclose the letters could be imputed to the prosecutor. Brief in Opposition 10. After reviewing the letters, however, the court concluded that "'there is no reasonable probability that any of the evidence would have altered either the guilt or punishment stage of petitioner's trial.'" *Ibid.*

## II

"It is well settled that the Government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania* v. *Ritchie*, 480 U. S. 39, 57 (1987). This Court has determined that, for *Brady* violations during the guilt phase of a trial, *Brady* v. *Maryland*, 373 U. S. 83 (1963), materiality turns on whether there

is a reasonable probability that the evidence might have affected the outcome of the trial, such that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ritchie*, *supra*, at 57; see also *United States* v. *Bagley*, 473 U. S. 667, 674–678 (1985). Here, the state court simply assumed that this same standard of materiality is appropriate for suppression of evidence at the sentencing phase of a capital trial.

I am not so sure. The nondisclosure of evidence favorable to a capital defendant at the sentencing phase not only raises serious due process concerns, but also implicates the defendant's right under the Eighth and Fourteenth Amendments to present mitigating evidence before the sentencer. Given our heightened concern for reliability and individualized sentencing in the capital context, we have held that a defendant has a right to admit *all* relevant mitigating evidence. See, *e. g.*, *Eddings* v. *Oklahoma*, 455 U. S. 104, 110–112 (1982); *Lockett* v. *Ohio*, 438 U. S. 586, 604–605 (1978) (plurality opinion). Applying the outcome-focused reasonable probability standard to information withheld during the sentencing phase of a capital trial poses a serious threat to that right. In the instant case, petitioner's letters were directly relevant to her primary mitigation claim that she had acted under her husband's influence. Her right to introduce those letters into evidence was guaranteed by the Eighth and Fourteenth Amendments, independent of any due process claim she might have otherwise had.

In my view, the standard for reviewing *Brady* violations in the sentencing phase of a capital trial is an important and recurring issue that warrants the Court's attention. See *Brown* v. *Chaney*, 469 U. S. 1090, 1096 (1984) (Burger, C. J., dissenting from denial of certiorari).

III

A final comment is necessary. Petitioner's counsel before this Court wrote three terse sentences describing the reasons why we should grant certiorari. He merely asserted a *Brady* violation without discussing the relevant law or analyzing the facts of this case. Such brevity—unconscionable in a capital case—raises a serious question as to whether petitioner has received effective assistance of counsel. I dissent.