Wallace M. FUGATE, III, Petitioner,

v.

Tony TURPIN, Warden, Georgia Diagnostic & Classification Prison, Respondent.

No. 5:97–CV–712–2 (WDO).

United States District Court, M.D. Georgia, Macon Division.

June 18, 1998.

Stephen Brooks Bright, Christopher M. Johnson, Atlanta, GA, for Petitioner.

Susan V. Boleyn, Mary Beth Westmoreland, Atlanta, GA, for Respondent.

## *ORDER*

OWENS, District Judge.

Petitioner Wallace Fugate was convicted of the 1991 murder of his ex-wife and sentenced to death. On December 10, 1997, he filed this 28 U.S.C. § 2254 federal habeas corpus petition seeking to vacate his conviction and sentence. Having carefully considered the arguments of counsel, the relevant case law and the record as a whole, the court issues the following order.

### I. *Basic Facts and Procedural History*

The facts as thoroughly recounted in the Supreme Court of Georgia's opinion affirming Fugate's conviction and sentence are as follows:

> Fugate and the victim were divorced after almost 20 years of marriage. The victim lived with their son in the former marriage residence, while Fugate moved to another town to minimize the likelihood that he would find himself in violation of a restraining order prohibiting him from having contact with his former wife. However, on Saturday, May 4, 1991, Fugate went to the victim's residence while she and the son were at work. (The son worked part-time at the same business as the victim.) According to Fugate, the victim had left

him a note stating she would be in South Carolina that weekend, and he thought he would repair his son's automobile while they were gone. Fugate broke into the house soon after his wife and son left for work and stayed there from 9:00 a.m. until they returned home at 5:30 that afternoon. When the victim and the son returned home, they noticed that the son's car had been moved. She called her sister. The son testified that when he heard a noise in the basement, he got his rifle and ordered Fugate to come out. When Fugate appeared with a revolver in his hand, the son tried to shoot him because Fugate had threatened to kill the victim "if he ever caught her alone."

However, the son's rifle had been unloaded and disabled and would not fire. Fugate brushed past his son and went to the victim.

According to Fugate, he was surprised by the victim's return, and went to the basement thinking he would sneak out a back door and avoid a confrontation. However, there were too many locks on the back door, so he hid, hoping they would soon leave. When he was discovered, he went upstairs to his wife, who was calling the police, "mashed down" the receiver and told her to take him to the sheriff, thinking this would defuse the situation. However, she was scared—partly because he had a gun in his hand—and attacked him before he could put it in his pocket. As they fought their way out to her van, she knocked him down several times and tried to take away his gun. During the scuffle, the gun went off once inside the house, and a second time as he was trying to put her in the van. Both shots were accidents, according to Fugate. After the second shot mortally wounded her, he took the van and drove off.

According to the son, Fugate dragged the victim out to the van, pistol-whipping her when she resisted. He shot once in the house trying to scare her into obeying, and then, when he was unable to force her into her van, Fugate grabbed her hair, jerked her head back and shot her in the forehead. He dropped her body to the ground and drove off.

Besides the bullet wound in the forehead, the victim's body was bruised on the face, shoulders and arms and there was a blunt-force laceration on the back of her head. The son testified that Fugate had struck the victim at least 50 times before shooting her. A photograph of Fugate taken shortly after his arrest does not show that he suffered any visible cuts or bruises.

*See Fugate v. State*, 431 S.E.2d 104, 106–108, 263 Ga. 260, 260–61 (1993).

On April 27, 1992, a jury convicted Fugate of murder, kidnapping with bodily injury, burglary, two counts of aggravated assault, and one count of theft by taking. Fugate received a death sentence for the murder count, life in prison consecutive to the death sentence for kidnapping with bodily injury, twenty years for burglary and ten years for theft by taking. A motion for new trial was denied after a hearing on October 23, 1992. Fugate appealed to the Supreme Court of Georgia, which heard oral argument on February 16, 1993, affirmed the convictions and sentences on June 21, 1993, and denied Fugate's motion for reconsideration on July 15, 1993.

Fugate then filed his state habeas petition in the Superior Court of Butts County on March 28, 1994, and filed an amended petition on December 28, 1995. Evidentiary hearings were held in the state habeas court on January 10 and 11, 1996. After the parties filed post-hearing briefs, the state habeas court denied Fugate's petition on October 5, 1996. Fugate then appealed from the denial of his state habeas petition, and filed an application for a Certificate of Probable Cause to Appeal in the Supreme Court of Georgia. This application was denied on April 24, 1997, and Fugate's motion for reconsideration was denied on May 30, 1997. Fugate filed this, his first application for federal habeas corpus relief, on December 10, 1997.

## II. Standard of Review

The Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), enacted on April 24, 1996, amended 28 U.S.C. § 2254 by establishing a more deferential standard for federal court review of state court adjudica-

tions. The provisions of amended § 2254 apply to all habeas cases filed after the AEDPA became effective on April 24, 1996, *Neelley v. Nagle,* 138 F.3d 917, 921–22 (11th Cir.1998), and thus apply to this habeas proceeding.[1]

Amended § 2254 states in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (West Supp.1997).

In *Neelley,* the Eleventh Circuit interpreted the new, more deferential standard laid out in subdivision § 2254(d), and concluded that

[A] court evaluating a habeas petition under § 2254(d)(1) must engage in a three-step process: First, the court must "survey the legal landscape," ..., to ascertain the federal law applicable to the petitioner's claim that is "clearly established" by the Supreme Court at the time of the state court's adjudication. Second, the court

must determine whether the state court adjudication was contrary to the clearly established Supreme Court case law, either because the state court failed to apply the proper Supreme Court precedent, or because the state court reached a different conclusion based on substantially similar facts. If the state court's decision is not contrary to law, the reviewing court must then determine whether the state court unreasonably applied the relevant Supreme Court authority. The state court decision must stand unless it is not debatable among reasonable jurists that the result of which the petitioner complains is incorrect.

*Neelley,* 138 F.3d at 924–25.

Thus, two main standards govern the court's review of Fugate's habeas petition. First, under subdivision (e), factual determinations made by a state court are presumed correct, and that presumption can only be overcome by the petitioner presenting clear and convincing evidence that the factual determination was erroneous. Second, under subdivision (d), any claim decided on the merits in a state court proceeding cannot form the basis for federal habeas relief unless the state court ruling fails the analysis laid out in *Neelley.*

## III. Exhaustion of State Remedies and Procedural Defaults

 Generally, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies by fairly presenting the federal claims to the state court, making the state court aware that federal constitutional issues are presented and giving the state court an opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir.1998). The normal course when a prisoner presents a "mixed" petition—that is, one where some of the claims presented were

1. The AEDPA also added a new Chapter 154 to Title 28 of the U.S.Code, "Special Habeas Procedures in Capital Cases," which provides for expedited habeas review for those states that opt into that chapter by enacting appropriate mechanisms for appointing counsel in habeas cases. The State has not asserted that the new expedited

measures should apply in this case, and the court now holds that they do not. Because § 2254 is part of Chapter 153, "the applicability of amended § 2254 is unaffected by whether a state has put appropriate counsel appointment mechanisms in place." *Neelley,* 138 F.3d at 922.

exhausted and some were not—is for the federal court to dismiss the petition without prejudice, allowing either resubmission of only exhausted claims or total exhaustion. *Id.* at 736 (citing *Rose v. Lundy,* 455 U.S. 509, 519–20, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982)). However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, federal courts may "forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Id.* at 736 (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991)). In that instance, because the unexhausted claims cannot be reviewed by the state court due to a procedural default, it serves no purpose to dismiss the petition for further exhaustion. *Id.*

██ Fugate admits that he has presented one claim which was not exhausted in the state court system prior to its being raised here. Specifically, although he alleged ineffective assistance of counsel in his state habeas corpus petition, the claim detailed in ¶ 37(aj) of Fugate's petition, alleging that counsel was ineffective in failing to seek an instruction on voluntary manslaughter, was not previously raised. The court finds that under Georgia law, this unexhausted claim would be procedurally barred from consideration in Georgia courts absent a showing of both cause for the default and actual prejudice resulting from the alleged constitutional violation. O.C.G.A. § 9–14–51; *see also Snowden,* 135 F.3d at 736 n. 3. Fugate has failed to make the required showing of cause and actual prejudice with regard to this claim, and the court cannot see any reasonable possibility that an exception to the procedural bar might still be available to Fugate. Accordingly, this claim cannot form the basis for federal habeas relief, and the court will not consider it on the merits.

A number of the claims now raised were expressly found to be procedurally barred by the state habeas court: (1) Section III B, ¶ 40, in which Fugate alleges that his statement to police was improperly admitted; (2) Section III B, ¶ 41, in which Fugate contends the evidence retrieved from the van should have been suppressed because the crime scene was improperly preserved; (3) Section III B, ¶ 42, in which Fugate contends the State disposed of crucial evidence prior to trial making the use and inspection of that evidence by the defense impossible; (4) Section III B, ¶ 43, in which Fugate alleges that George Sims should not have been allowed to testify about the contents of the victim's telephone bill because it was not authenticated; (5) Section III B, ¶ 44, in which Fugate contends that GBI Agent Whidby improperly testified as to the identities of people whose telephone numbers appeared on Pattie Fugate's phone bill; and (6) Section III C, ¶ 45, in which Fugate contends that the District Attorney improperly cross-examined him about facts not in evidence and insinuated matters never proven; (7) Section III C, ¶ 46, in which Fugate alleges the district attorney improperly asked a witness what a person would have to do to deserve the death penalty; (8) Section III C, ¶ 47, in which Fugate alleges prosecutorial misconduct in that the District Attorney's closing argument misstated the state's burden of proof as to a "moral and reasonable certainty;" and (9) Section III C, ¶ 48, in which Fugate alleges prosecutorial misconduct in the District Attorney's injecting prejudicial facts into his closing argument.

██ Absent a showing of cause and actual prejudice, this court must defer to the state court's decisions and cannot review these claims on the merits. *Snowden,* 135 F.3d at 737; *see also Alderman v. Zant,* 22 F.3d 1541, 1549 (11th Cir.1994) (holding that where the state court ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim). Fugate has failed to make the required showing with regard to any of these claims, and so the court also will not review them on the merits.

## IV. Remaining Claim—Ineffective Assistance of Counsel

The only remaining claim, consisting of subparts (a) through (ay) of ¶ 37, alleges numerous instances of ineffective assistance of counsel at all stages of the trial, sentencing, appeal, and state habeas processes.

Other than the one unexhausted claim which the court held to be procedurally barred in the foregoing section, all of these grounds were raised by Fugate below and rejected by the state habeas court.

In reviewing the ineffective assistance claim, the state habeas court first held that there were no extraordinary circumstances in this case which resulted in a complete denial of counsel or a breakdown in the adversary process, and therefore that the claim is governed by the normal standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires that a petitioner show both that counsel was ineffective and that he was prejudiced by that ineffectiveness.[2] Having determined the governing standard, the state court then spent a total of 74 pages carefully reviewing each of Fugate's claims of ineffective assistance, and concluded that while there were some deficiencies in defense counsel's performance, the court could not find that those deficiencies amounted to ineffective assistance of counsel.

It is this holding, which was adjudicated on the merits in a state court proceeding, that must be analyzed under the guidelines laid out in *Neelley*. See 28 U.S.C. § 2254(d). The first step of such an analysis is to ascertain the clearly established federal law as determined by the Supreme Court. *Neelley*, 138 F.3d at 925. The court agrees with the state court that the proper Supreme Court precedent governing Fugate's claim is *Strickland*. The facts of this case are not "substantially similar" to the facts in *Strickland*, so the state court's result cannot be said to be contrary to *Strickland* in particular or federal law in general. Thus, the only issue remaining is whether the state habeas court unreasonably applied *Strickland* to the facts of this case. *Neelley*, 138 F.3d at 924–25, 926. The decision must stand unless "it is not debatable among reasonable jurists that the result of which [Fugate] complains is incorrect." *Neelley*, 138 F.3d at 924–25.

■ The court has carefully reviewed each and every one of Fugate's grounds individu-

ally and on the merits. Having done so, the court cannot find that the state habeas court unreasonably applied *Strickland* to the facts of this case. On the contrary, the court finds that the state court's well-reasoned and thorough opinion adequately analyzed all claims and agrees with the state court's conclusions in all respects.

■ In so holding, the court notes that the state habeas court first examined the prior experience of Fugate's two attorneys at trial, and found them to be experienced in both criminal defense generally and death penalty cases in particular. The state court then reviewed each stage of the trial in chronological order, reviewing the claims raised in light of all the circumstances of the case. The court also notes that the majority of the allegations of ineffective assistance urged by Fugate involve judgment calls made by counsel during the heat of battle. These myriad judgments, of course, cannot now be called into question absent clear evidence that the judgment made was unreasonable by any recognizable standard of legal representation. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994). There is no example of unreasonable judgment on the part of counsel in this case.

Given the overwhelming evidence of Fugate's guilt, his self-destructive testimony on the stand, and the chosen defense strategy of "accidental discharge", the acts and omissions of Fugate's attorneys during both phases of the trial, at sentencing, on direct appeal, and throughout the entire post-conviction process were in all respects reasonable and based upon considered judgment. In short, the court agrees with the state court that while the defense was not perfect—it never is after the fact—under the circumstances it was more than constitutionally adequate.

## VI. Conclusion

Because the record already before the court is adequate to address all the issues raised, the court finds that an evidentiary

---

2. Fugate contended, as he does now, that his claim should be reviewed under the standard laid out in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), which allows for a presumption that counsel was ineffective in cases in which there were extraordinary circumstances that resulted in a complete denial of counsel or a "breakdown of the adversary process." *Cronic*, 466 U.S. at 657–58, 104 S.Ct. 2039.

 

hearing is unnecessary. Accordingly, having been carefully considered, and for the reasons stated above and in the government's response, Fugate's § 2254 motion is **DENIED**. The stay of execution previously entered by this court shall remain in effect until this court's decision becomes final or until it is otherwise lifted by a court of proper jurisdiction.