**UNITED STATES of America,**

**v.**

**Edward TRIPPE, Bruce Becker, Andrew Adams, Samuel Ward, Bryan McGuire, and Patricia Oppito Defendants.**

**No. 00 CR. 585(SWK).**

United States District Court, S.D. New York.

April 27, 2001.

**233**

Christopher J. Clark, United States Attorney, New York City, for Plaintiff.

Alan S. Futeras, New York City, Frank Carone, Mure & Carone PC, Brooklyn, NY, James R. Froccaro, Port Washington, NY, Ellen Resnick, Law Offices of Alan S. Fuertas, New York City, John F. Kaley, Weinberg, Kaley, Gross & Pergament, Garden City, NY, Erich Gleber, Clayman & Rosenberg, Richard W. Brewster, Howard L. Jacobs, Philip R. Edelbaum, Daniel F. Lynch, Magda Jimenez, Barrett Gravante et al, New York City, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

Defendants Edward Trippe ("Trippe"), Bruce Becker ("Becker"), and Andrew Adams ("Adams") move for the following relief: (1) suppression of wiretap evidence; (2) disclosure of similar or extrinsic act evidence pursuant to Federal Rule of Evidence 404(b); (3) accelerated disclosure of *Brady* and *Giglio* material; and (4) a summary of the testimony of any expert the Government intends to call at trial. Defendant Patricia Oppito ("Oppito") moves for (1) dismissal of Count One of the Indictment; and (2) severance of her case. Defendant Bryan McGuire ("McGuire") moves for (1) a bill of particulars, and (2) disclosure of co-conspirator plea allocutions. All of the moving defendants also move to join in the motions of their co-defendants. The Court addresses each motion in turn.

## *BACKGROUND*

On or about May 31, 2000, a grand jury in the Southern District of New York returned a seven count Indictment alleging securities fraud and mail fraud. Count One of the Indictment alleges that the object of the conspiracy was a scheme to

defraud investors in two private placements of Jackpot Entertainment Magazine ("Jackpot") stock. Specifically, the conspirators allegedly agreed that bribes would be paid to stockbrokers who sold shares of Jackpot private placements, and that those bribes would be kept secret from investors. In connection with the first Jackpot private placement, Trippe, Becker and Adams, all executives of Jackpot, allegedly paid such bribes and did not disclose them to investors. With regard to the second Jackpot private placement Oppito and McGuire, registered representatives who sold securities to the public, allegedly agreed to take such bribes from Trippe, Becker and Adams.

Count Two of the Indictment charges Trippe, Becker and Adams with substantive securities fraud in connection with their activities in the first Jackpot private placement. Counts Three through Seven charge Trippe, Becker and Adams with substantive mail fraud offenses arising from their activities in the first Jackpot private placement.

On November 30, 1999, Judge Shira A. Scheindlin approved the initial application to intercept oral communications in the conference room and desk area of the offices of DMN Capital. The authorization order was based upon facts set forth in an affidavit sworn to by Federal Bureau of Investigation Special Agent Kevin Barrows (the "Barrows Affidavit"). Applications for continued interception on January 3, 2000, February 2, 2000, March 6, 2000 and April 5, 2000[1] were also approved.

## DISCUSSION

### I. Suppression of the Wiretap Evidence

Wiretap warrants are governed by 18 U.S.C. Section 2510 (also referred to as

"Title III"). Section 2519(3)(a-d) requires that before ordering the interception of wire communications, a judge must determine, based on the facts presented in an affidavit, that (1) there is probable cause to believe that an individual is committing, has committed, or is about to commit, a crime; (2) there is probable cause that communications about the crime will be obtained through the wiretap; (3) alternative means have failed or are too dangerous or unlikely to succeed; and (4) there is probable cause to believe that the premises to be wiretapped are being used for criminal purposes or are used or owned by the target of the wiretap. *See United States v. Wagner*, 989 F.2d 69, 71 (2d Cir.1993). Defendants argue both that the Government failed to establish probable cause, *see* Defs.' Memo. at 11, and that the Government failed to use alternative investigative techniques before resorting to electronic surveillance. *See id.* at 13.

### A. Probable Cause

 Probable cause to authorize a wiretap "is established if the 'totality of the circumstances' contained in the affidavit indicates a probability of criminal activity and that evidence of the criminal activity could be obtained through the use of electronic surveillance." *United States v. Ambrosio*, 898 F.Supp. 177, 181 (S.D.N.Y. 1995). The Defendants, however, do not argue that there was no probable cause to suspect any criminal activity but instead argue that none of the information in the Barrows Motion "amounts to probable cause to believe that [Trippe] was either committing a crime or that he would be intercepted at DMN's offices." Defs.' Memo. at 12. Specifically, Defendants al-

---

1. The Honorable Judge Allen G. Schwartz approved the final application for an extension.

lege that "while there may have been probable cause to believe that particular communications concerning the extortion of Trippe would be obtained through the interception, the affidavit lacks probable cause to believe that Mr. Trippe would be overheard on the electronic surveillance," and fails "to establish probable cause to believe that Mr. Trippe himself was committing a crime." *Id.*

Title III requires that a surveillance application include "the identity of the person, if known, committing the offense and whose communications are to be intercepted." 18 U.S.C. Section 2518(1)(b)(iv). The wiretap statute does not require that every person whose conversations are intercepted must be named in the application nor does it expressly prohibit the investigative agency from naming other individuals in the application. *See United States v. Ambrosio*, 898 F.Supp. at 184. Rather, the statute's conditions are satisfied as long as the affidavit names "an individual" for whom there is probable cause to suspect criminal activity. *See id.* Since nothing in the statute restricts the Government from naming in the affidavit individuals as to whom it may not have probable cause, the statute's goal of providing notice is actually furthered by naming more, rather than fewer, persons. *See id.; see also United States v. Milan–Colon*, No. 91 Cr. 685, 1992 WL 236218, at *16 (S.D.N.Y. Sept. 8, 1992) (holding over-inclusion of persons in wiretap affidavit is not a cause for suppression but rather "furthers the policy of preventing unreasonable invasions of privacy" by ensuring that persons will be given notice of the order and intercepted communications). "It would be anomalous to punish the government by suppressing the wiretap evidence for naming [a defendant] in the affi-

davit when it could constitutionally *not* have named him and still have intercepted his calls." *United States v. Ambrosio*, 898 F.Supp. at 184.

Therefore, contrary to the Defendants' assertions, the issuing Judge was not required to find that there was probable cause that Trippe himself engaged in criminal activity to issue the warrant. *See United States v. Ambrosio*, 898 F.Supp. at 184. Rather, the relevant inquiry is whether there was probable cause that the conversations sought to be monitored were likely to contain evidence of a crime. *See id.; see also United States v. Shipp*, 578 F.Supp. 980 (S.D.N.Y.1984) (holding "[t]here is no requirement that probable cause be established with respect to every defendant ultimately indicted" and that the probable cause requirement in the wiretap context is "satisfied by identification of the telephone line to be tapped and the particular conversations to be seized."). Because there is no dispute that the Barrows Affidavit provided sufficient probable cause as to the other individuals named as interceptees,[2] the Defendants' motion to suppress the product of the electronic surveillance is denied.

## B. Alternative Investigative Techniques

The Defendants also argue that suppression is warranted because the Government failed to use alternative investigative techniques before resorting to electronic surveillance of DMN Capital's Office. *See* Defs.' Memo. at 13. Section 2518(1)(c) provides that any application for authorization of interception of electronic communication must include "a full and complete statement as to whether or not other investigative procedures have

---

**2.** The Defendants concede that "the affidavit establishes probable cause to believe that

Lino and others were discussing the commission of an offense." Defs.' Memo. at 12.

been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 28 U.S.C. Section 2518(1)(c). This requirement ensures that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose crime." *United States v. Torres,* 901 F.2d 205, 231 (2d Cir.1990) (internal citations omitted).

■■■ While generalized or conclusory statements in an application are insufficient to support a showing of necessity, *see United States v. Lilla,* 699 F.2d 99, 104 (2d Cir.1983), the application must be viewed in a practical and common sense manner and need be only minimally adequate to support the issuing judge's determination of necessity. *See United States v. Torres,* 901 F.2d at 231. The statute requires only that the applicant inform the judge reviewing the application "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Lombardo,* No. 98 Cr. 1180, 1999 WL 305096, at *5 (S.D.N.Y. May 14, 1999). The issuing judge's determination that the Government has made adequate use of alternative investigatory techniques is entitled to substantial deference. *See United States v. Wilkinson,* 754 F.2d 1427, 1433 (2d Cir.1985).

■■■ Defendants argue that "the government could have achieved its objectives with less intrusive measures, namely, the assistance of its well-positioned cooperating witness who claimed to have significant personal knowledge of, and direct access to, the premises." Defendants Memo. at 19. They further argue that the "[a]ffidavit does *not* claim that this cooperating witness was unwilling to have discussions with other targets of the investigation." *Id.*

The Barrows Affidavit detailed numerous problems with "normal law enforcement methods." The Affidavit explained that physical surveillance of the targets, telephone toll records and pen register devices would provide only limited investigative information. *See* Barrows Affidavit at 47–49. The Affidavit also explained why the use of a Grand Jury did not appear to be a promising method of investigation and opined that the use of a search warrant would be premature and alert the targets of the investigation. *See id.* at 49–53.

The Barrows Affidavit also detailed the reasons why the Government had concluded that using confidential informant Jeffrey Pokross ("Pokross") to make consensual recordings was both too dangerous and impractical. *See id.* at 50. Pokross was greeted with physical contact including hugs and pats on the back presenting an intolerable risk that one of the subjects would discover the recording device. *See id.* The Affidavit also noted the time limits inherent in the tape recording device and the fact that meetings took place on short or no notice which did not allow a recording device to be placed on Pokross. Finally, the Affidavit explained that Pokross was not present at all meetings preventing full investigation of the unlawful conversations taking place. *See id.* at 51.

On the basis of the Barrows Affidavit, the issuing judge was justified in concluding that alternative investigatory techniques were unlikely to advance the investigation and that a wiretap was necessary. Accordingly, the motion to suppress wiretap evidence is denied.

## II. Federal Rule of Evidence 404(b)

Defendants seek immediate disclosure of all other crimes, wrongs, or acts that the Government intends to introduce at trial, pursuant to Federal Rule of Evidence

404(b). *See* Defs.' Memo. at 29. Rule 404(b) allows the admission of evidence of other crimes, wrongs or acts for purposes including "proof of motive, opportunity intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Civ.P. 404(b). However, the Rule also requires that "the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." *Id.* This is designed to reduce surprise and promote early resolution of admissibility issues. *See id.*

The Government represents that it is cognizant of the provisions for pretrial notice in 404(b) and claims it will provide such notice "well in advance of trial and certainly early enough to provide the relevant defendants with sufficient notice," but does not specify a time frame. *See* Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions ("Gov't Memo.") at 30–31. The Defendants' motion is granted insofar as the Government is directed to give notice of its Rule 404(b) evidence at least ten working days before trial.

## III. Expert Witness Information

Defendants move for an order, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, directing the Government to produce the identity of any expert witness and any and all information, studies and reports upon which any expert witness will base his opinion reasonably in advance of trial. *See* Defs.' Memo. at 31. The Government responds that it will comply with the notice provisions of Federal Rule of Criminal Procedure 16 and will disclose the information no later than ten business days prior to trial. *See* Gov't. at 31. Ac-

cordingly, the Defendants' motion is denied at this time.

## IV. Demand for Brady and Giglio Material

■■■ Defendants move for an order compelling the production of Brady material. *See* Defs.' Memo. at 19. Under the rule defined in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (*"Brady"*), the Government is required to provide a defendant with exculpatory or mitigating evidence in its possession. The Government responds that it is fully aware of its obligations under *Brady* and has acknowledged its continuing duty to comply with *Brady. See* Gov't. Memo. at 24. In accordance with its traditional practice, the Court accepts the Government's affirmation that it will abide by *Brady.*

■■■ Defendants additionally move for an order compelling the disclosure of witness impeachment materials, discoverable by the rule in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (*"Giglio"*). *See* Defs.' Memo. at 24. There is no requirement that the Government disclose information pertaining to the credibility of a witness before the witness testifies. *See United States v. Velasquez,* No. 96 Cr. 126, 1997 WL 414132, at *6 (S.D.N.Y. July 23, 1997). Due process requires only that a defendant receive such information before it is too late for him to make beneficial use of it at trial. *See United States v. Frank,* 11 F.Supp.2d 322, 324 (S.D.N.Y.1998) ("Provided that the defendant has sufficient time after receipt of Giglio material to use it effectively at the trial, there is no violation of the defendant's rights from deferring production of this material until closer to the time of the witness' testimony."); *United States v. Shoher,* 555 F.Supp. 346, 352 (S.D.N.Y. 1983) (accused to receive Brady material in

time "to permit effective evaluation, preparation, and presentation at trial") (internal citations omitted). The usual practice in this district is that the Government agrees to make impeachment information available to the defense at the same time as Jencks Act material, that is, at least one day before the Government witness is called to testify. *See United States v. Jailall,* No. 00 Cr. 69, 2000 WL 1368055, at \*6 (S.D.N.Y. Sept. 20, 2000); *United States v. Kelly,* 91 F.Supp.2d 580, 585; *United States v. Gutierrez–Flores,* No. 94 Cr. 393, 1994 WL 558034, at \*3 (S.D.N.Y. Oct. 11, 1994). Therefore, the Government's representation that it intends to produce impeachment material the Friday before a witness is scheduled to testify or earlier if necessary is sufficient. Accordingly, the Defendant's request for accelerated disclosure of *Brady* and *Giglio* material is denied.[3]

## V. Dismissal of Count One

■■■ Oppito moves to dismiss Count One of the Indictment on the basis of duplicity, arguing that the allegations contained in Count One improperly charges multiple conspiracies. *See* Oppito Memo. at 2. Specifically, Oppito argues that there were two separate conspiracies because the two placements of Jackpot stock took place approximately one and a half years apart, involved different sets of alleged conspirators and because the second placement of Jackpot stock was never completed. *See id.* at 3.

■■■ Rule 8(a) of the Federal Rules of Criminal Procedure provides for the joinder of offenses in the same indictment, "in a separate count for each offense." Therefore, an indictment is duplicitous if it combines two or more distinct crimes into a single count. *See United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir.1992).

■■■ Nevertheless, it is firmly established in this Circuit that an indictment count may allege a conspiracy to commit multiple crimes. *See United States v. Conesa,* 899 F.Supp. 172, 174 (S.D.N.Y. 1995). The Second Circuit has explicitly held that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir. 1992) (*quoting United States v. Tutino,* 883 F.2d 1125, 1141 (2d Cir.1989)). Further, "[w]hether the government has proven the existence of the conspiracy charged in the indictment and each defendant's membership in it, or instead, has proven several independent conspiracies is a question of fact for a properly instructed jury." *United States v. Johansen,* 56 F.3d 347, 350 (2d Cir.1995).

Count One of the Indictment alleges a single conspiracy with a common goal among all participants— to defraud investors in Jackpot stock. Oppito's argument that the alleged conspiracy involves two separate placements of Jackpot stock is not sufficient to transform a single conspiracy into multiple conspiracies. *United States v. Berger,* 224 F.3d 107, 114–15 (2d Cir.2000) (holding that a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it

---

**3.** It is unclear whether Defendants request an order directing the Government to produce materials pursuant to the Jencks Act, 18 U.S.C. Section 3500. The Jencks Act provides that no statements by a government witness shall be the subject of discovery or inspection until such witness has testified on direct examination at trial. The Government has agreed to provide Jencks Act material no later than the Friday before the testimony of any witness. Accordingly, to the extent that Defendants move for Jencks Act disclosure, the motion is denied.

may involve two or more phases or spheres of operation); *United States v. Aracri*, 968 F.2d at 1521 (internal citations omitted) (stating that a single conspiracy does not become a multiple conspiracy by "lapse of time, change in membership, or a shifting emphasis on its locale of operations"). Accordingly, Oppito's motion to dismiss Count One of the Indictment is denied.

## VI. Motion for Severance

Oppito moves for a severance pursuant to Rule 14 of the Federal Rules of Criminal Procedure asking that she be tried separately from her co-defendants. Oppito claims, *inter alia*, that failure to sever her trial from "the other more active defendants will result in undue prejudice" as the "potential for jurors to attribute evidence of knowledge of, and participation in, the First Placement to [her] would deny her a fair trial." Oppito Motion at 6.

Rule 14 provides that "if it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment ..., the court may order ... separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed.R.Crim.P. 14. The Supreme Court, however, has recognized "a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "It would impair both efficiency and fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience ... of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702,

95 L.Ed.2d 176 (1987); *see also United States v. Jimenez*, 824 F.Supp. 351, 366 (S.D.N.Y.1993) ("The risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money and scare judicial resources that a joint trial permits.").

Therefore, a defendant urging severance must shoulder an "extremely difficult burden" of showing that she would be so prejudiced by the joinder that she would be denied a constitutionally fair trial. *See United States v. Johnson*, 21 F.Supp.2d 329, 340 (S.D.N.Y.1998). It is not sufficient for a defendant to show that he or she may suffer some prejudice, or may have a better chance for acquittal at a separate trial. *See United States v. Scarpa*, 913 F.2d 993, 1015 (2d Cir.1990); *United States v. Torres*, 901 F.2d at 213. A district court should grant a severance motion "only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. at 539, 113 S.Ct. 933.

The Defendants in this case are charged with conspiracy, and generally, in conspiracy cases, the Government is entitled to present the entire range of evidence against each defendant. *See United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir.1987). Moreover, "differences in degree of guilt and possibly degree of notoriety" of defendants do not require that there be separate trials. *United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.1975). Therefore, Oppito's claim that the evidence against her is weaker than the evidence against her co-defendants falls far short of demonstrating the necessary prejudice that would require severance. *See United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir.1983) ("Dif-

fering levels of culpability and proof are inevitable in any multi-defendant trial and standing alone, are insufficient grounds for separate trials."). Accordingly, Oppito's motion for severance is denied.

## VII. Motion for a Bill of Particulars

 McGuire moves for a bill of particulars with the "[n]ames of all co-conspirators and/or aiders and abettors, of the defendant [Bryan McGuire], known to the United States Government." McGuire Memo. at 1.

 Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him thereby enabling the defendant to prepare for trial, avoid surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. *See Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927); *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). The Government, however, need not particularize its evidence unless the requested particularization is necessary to give the defendant enough information about the offense charged so that he may, by the use of diligence, prepare adequately for trial. *See United States v. Allocco,* 801 F.Supp. 1000, 1003 (E.D.N.Y.1992). If the Government has provided the needed information in some other satisfactory form, then no bill of particulars is required. *See id.* Therefore, the proper test in deciding whether a bill of particulars should be required of the Government is whether the bill of particulars is necessary for the defense, not whether it would aid the defendant in his preparation. *See United States v. Guerrerio,* 670 F.Supp. 1215, 1224 (S.D.N.Y. 1987); *see also United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987) ("A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."). Moreover, demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied. *See United States v. Juliano,* No. 99 Cr. 1197, 2000 WL 640644, at *1 (S.D.N.Y. May 18, 2000); *see also United States v. Torres,* 901 F.2d 205, 233–34 (2d Cir.1990) (upholding district court's denial of a bill of particulars where the defendant had requested, in part, "the identity of other persons 'known and unknown' as alleged in ... the indictment"); *United States v. Reinhold,* 994 F.Supp. 194, 200–01 (S.D.N.Y.1998) (denying defendants' motion for a bill of particulars that sought "identification of alleged co-conspirators who have not been named in the Indictment").

In addition to a fifteen page detailed Indictment, the Government has made available to the defense: (1) all Title III orders and applications in this case; (2) the line sheets for all Title III interceptions; (3) all documents provided to the Government by Pokross, its confidential informant; and (4) all documents obtained in five searches related to this case. The Government has also indexed all tape recordings relevant to his case and made them available for copying. *See* Gov't Memo. at 2–3. The Indictment, coupled with the discovery information thus far provided to defendants, sufficiently advises McGuire of the crime charged and the general outline of the government's case against him. Accordingly, McGuires' motion for a bill of particulars is denied.

## VIII. Motion for Co–Conspirator Guilty Plea Allocutions

McGuire also moves for the disclosure of co-conspirator plea allocutions and asks

whether the Government intends to offer co-conspirator pleas into evidence. *See* McGuire Memo. at 1. The Government responds that "at such time such evidence becomes available, i.e., when an if any co-conspirators plead guilty, the Government will, within a reasonable time, inform the defense whether it intends to offer such evidence at trial and the theory upon which the admissibility of such evidence is based." Gov't. Memo. at 31. The Court accepts the Government's affirmation that it will provide the requested evidence should any co-conspirator plead guilty. Accordingly, McGuires' motion is denied.

## IX. Motion to Join Co–Defendants Arguments

All moving parties seek to join the arguments made in support of the pretrial motions submitted by and on behalf of their co-defendants to the extent that they are not inconsistent with their motions. *See* Memorandum of Law in Support of Pretrial Motions for Trippe, Becker and Adams ("Defs.' Memo.") at 33; McGuire Memo. at 2; Oppito Memo. at 7. Because there is no opposition to this motion by the Government, the Defendants' motion is granted in the interests of judicial economy. All rulings set forth in this decision will apply to those Defendants who joined in the motions of the co-defendants.

### *CONCLUSION*

For the reasons set forth above, the Defendants' motion for (1) suppression of the wiretap evidence is denied; (2) disclosure of 404(b) evidence is granted; (3) disclosure of expert witness information is denied; (4) accelerated disclosure of *Brady* and *Giglio* material is denied; (5) dismissal of Count One of the Indictment is denied; (6) severance is denied; (7) a bill of particulars is denied; (8) co-conspirator plea allocution is denied; and (9) permission to join in their co-defendants motion is granted.

SO ORDERED.