ELIZABETH A. WOLFORD, United States District Judge
Presently before the Court is the motion of defendant Thomas Scanlon ("Scanlon") seeking a bill of particulars with respect to Counts 27 and 28. (Dkt. 385). For the reasons set forth below, the Court denies Scanlon's motion for a bill of particulars.
BACKGROUND
Scanlon and 11 remaining co-defendants[1] are charged with various crimes in the 46-count Second Superseding Indictment ("Indictment"), including a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"), drug trafficking offenses, and firearms offenses. (Dkt. 33). As relevant to this Decision and Order, the Indictment charges Scanlon with obstruction of *580 justice in two different counts. (Id. at 48-49). Count 27 charges him with obstruction of justice in violation of 18 U.S.C. § 1512(c)(2), while Count 28 charges him with obstruction of justice in violation of 18 U.S.C. § 1503. (Id. ).
On July 24, 2017, this Court issued a Decision and Order addressing, inter alia, the portion of Scanlon's pretrial omnibus motion that requested a bill of particulars with respect to Counts 27 and 28 of the Indictment. (Dkt. 691). The Court concluded that, "for the most part, Scanlon has not met his burden to show that a bill of particulars is warranted with respect to Counts 27 and 28." (Id. at 19). But because "it is not clear whether the Government will seek to rely on statements allegedly made by Scanlon to the FBI as the basis for the charges in Counts 27 and 28" (id. at 23), the Court reserved decision on the motion for a bill of particulars. (Id. at 24). The Court also directed the Government to submit supplemental briefing that addresses whether it is relying on such statements to support the charges in Counts 27 and 28, and, if so, to identify the documentation that reflects any such statements (and provide a copy to the Court) and set forth the reasons why the Government believes that Scanlon has enough information to prepare his defense without further particularization. (Id. ).
On August 7, 2017, the Government filed a supplemental submission regarding Counts 27 and 28 in response to the Court's Decision and Order. (Dkt. 719). The Government asserts that it is not relying on statements that Scanlon made to the FBI as the basis for the charges in Counts 27 and 28. (See id. at 2-3). The Government also sets forth examples of how, in its view, the Indictment, Scanlon's grand jury testimony, and discovery together are sufficient for Scanlon to prepare his defense. (Id. at 5-18). On August 21, 2017, Scanlon filed a response to the Government's supplemental submission. (Dkt. 744).
DISCUSSION
I. Standard of Review
Pursuant to Fed. R. Crim. P. 7(f), a defendant may seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars amplifies the pleading (i.e. the indictment), and therefore, the Government will be "strictly limited to proving what it has set forth in it." United States v. Germain, 33 Fed.Appx. 565, 566 (2d Cir. 2002) (quoting United States v. Glaze, 313 F.2d 757, 759 (2d Cir. 1963) ). As a result, a bill of particulars should not be substituted for a form of discovery-it "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994). That said,
[w]hile a bill of particulars is not intended, as such, as a means of learning the government's evidence and theories, if necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or of theories. A district court judge, however, has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form.
United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotation marks and citations omitted). "The granting of a *581 bill of particulars rests within the sound discretion of the district court." United States v. Strawberry, 892 F.Supp. 519, 526 (S.D.N.Y. 1995).
II. Counts 27 and 28
Count 27 alleges that, between July 15 and September 16, 2015, Scanlon corruptly obstructed, influenced, and impeded an official proceeding-the grand jury investigation-by testifying falsely regarding ten categories of information:
(i) his knowledge of the Kingsmen Motorcycle Club; (ii) his relationship with David Pirk; (iii) the amount of communication he had and maintained with David Pirk; (iv) his telephone contact with David Pirk on September 6, 2014; (v) his meeting with David Pirk on September 6, 2014, in Delevan, New York; (vi) the role of the Kingsmen Nomads; (vii) his knowledge of the shutdown of the Springville Chapter Kingsmen clubhouse on June 7, 2013; (viii) the assault of Victim B, a person known to the Grand Jury and robbery at the Springville Chapter Kingsmen clubhouse on June 7, 2013; (ix) the purpose and substance of his meeting with the Outlaws in Olean, New York, in the summer of 2014; and (x) his role in the Kingsmen Motorcycle Club.
(Dkt. 33 at 48). Count 27 alleges a violation of 18 U.S.C. § 1512(c)(2).
Count 28 charges Scanlon with a violation of 18 U.S.C. § 1503 as follows:
Between on or about July 15, 2015, and on or about September 16, 2015, in the Western District of New York, ... THOMAS SCANLON ... did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede the due administration of justice in investigations beins conducted by a Grand Jury and the Federal Bureau of Investigation in the Western District of New York, by testifying falsely and evasively regarding (i) his knowledge of the Kingsmen Motorcycle Club; (ii) his relationship with David Pirk; (iii) the amount of communication he had and maintained with David Pirk; (iv) his telephone contact with David Pirk on September 6, 2014; (v) his meeting with David Pirk on September 6, 2014, in Delevan, New York; (vi) the role of the Kingsmen Nomads; (vii) his knowledge of the shutdown of the Springville Chapter Kingsmen clubhouse on June 7, 2013; (viii) the assault of Victim B, a person known to the Grand Jury and robbery at the Springville Chapter Kingsmen clubhouse on June 7, 2013; (ix) the purpose and substance of his meeting with the Outlaws in Olean, New York, in the summer of 2014; and (x) his role in the Kingsmen Motorcycle Club.
(Id. at 49 (emphasis added)).
III. Summary of the Government's Supplemental Submission
In response to the Court's prior Decision and Order, the Government asserts that, with respect to Count 27, it "is not relying upon statements the defendant made to the FBI as the 'basis' for the charges. The obstructive conduct is the defendant's grand jury testimony." (Dkt. 719 at 2). The Government maintains that, although the alleged obstructive conduct is Scanlon's grand jury testimony, the jury may consider the statements that Scanlon made to the FBI on dates other than those in which he testified in an official proceeding before a federal grand jury in order "to establish [Scanlon's] awareness of the official proceeding, and [his] 'corrupt' mens rea ." (Id. at 3).
The Government also asserts that the obstructive conduct at issue in Count 28, like Count 27, is Scanlon's grand jury testimony, and that the jury may consider Scanlon's statements to the FBI on other days in order to establish his awareness of *582 the official proceeding and his mens rea. (Id. at 3).
The Government argues that the clear allegations of the Indictment and Scanlon's copies of all of his statements (either before the grand jury or to the FBI) are sufficient to allow Scanlon to prepare a defense to Counts 27 and 28. (Id. at 4). The Government provides some examples of how the Indictment, along with Scanlon's grand jury testimony and discovery that it has provided to Scanlon, obviate the need for a bill of particulars. (Id. at 5-18).
As to Scanlon's "knowledge of the Kingsmen Motorcycle Club," the Government points out that Scanlon "essentially disavowed knowledge of and/or participation in criminal activity and characterized the KMC as a non-profit organization of individuals who enjoy riding motorcycles" (id. at 5), which the Government contrasts with KMC bylaws, meeting minutes, and allegations within the Indictment that reflect violent acts, drug activity, and other criminal conduct. (Id. at 6).
As to Scanlon's "relationship with David Pirk" and "amount of communication [Scanlon] had and maintained with David Pirk," the Government compares Scanlon's grand jury testimony on July 15, 2015, with his testimony on September 16, 2015. (Id. at 7-9). According to the Government:
Scanlon's testimony went from, in his July 15, 2015, not knowing definitively who the National President is, and "I'm not really involved with the club. I travel a lot so I don't get involved in the politics. I'm not an officer. I just go there, pay my dues, if I want to have a drink that's fine, I stay out of the politics." To, in his September 16, 2015, admitting that he was made New York Regional President by Pirk for the time-period encompassing the murders of Paul Maue and DJ Szymanski.
(Id. at 9). The Government also points to a summary of Scanlon's telephonic communications with Pirk (attached to the Government's supplemental submission as Exhibit A) in support of its contention that Scanlon "had far more communication with, and knowledge of, David Pirk than he attempted to lead the Grand Jury to believe." (Id. at 9-10).
As to Scanlon's "telephone contact with David Pirk on September 6, 2014" and his "meeting with David Pirk on September 6, 2014, in Delevan, New York," the Government argues that "[a] comparison of [Scanlon's] answers during his Grand Jury testimony, with his cell phone records (see Exhibit A) and cell tower mapping pertaining to [Scanlon's] cell phone, which provides his general geographic location and is attached hereto as Exhibit B, should readily enable [Scanlon] to prepare his defense." (Id. at 11). The Government highlights some examples of what it characterizes as false and evasive testimony. For example, in his grand jury testimony on September 16, 2015, Scanlon denied speaking with Pirk on the night of the murders or during the early morning hours, insisting instead that:
The only conversation that I had had with Pirk was it was a little bit later. Not that day, I think it was in during the week or something or no. I can't quite remember, to be honest with you what exactly what day or time it was, but I believe there was a conversation.
(Id. at 13). Based on phone records, however, "Scanlon called co-defendant Pirk at 4:29 a.m. [on September 6, 2014], within 90 minutes of the murders, and they spoke for over 2 minutes." (Id. at 14).
As to the "role of the Kingsmen Nomads," the Government gives an example where, during his testimony before the grand jury on July 15, 2015, Scanlon denied that the Kingsmen Nomads had any special role or duty within the KMC, but later stated that a Kingsmen Nomad "was *583 like a liaison to communicate between other clubs, kind of like a front-line guy to communicate with other clubs." (Id. at 15).
As to Scanlon's "knowledge of the shutdown of the Springville Chapter Kingsmen Clubhouse on June 7, 2013" and "[t]he assault of Victim B and robbery at the Springville Chapter Kingsmen Clubhouse on June 7, 2013," the Government asserts that Scanlon can adequately prepare his defense based on his statements and information set forth in the Indictment. (Id. at 16).
As to "[t]he purpose and substance of his meeting with the Outlaws in Olean, New York, in the summer of 2014," the Government contends that Scanlon, in his testimony before the grand jury on July 15, 2015, essentially denied the occurrence of any such meeting, or, if it did occur, he denied any involvement in it. (Id. ).
As to Scanlon's "role in the Kingsmen Motorcycle Club," the Government maintains that Scanlon "testified falsely, evasively, corruptly, omitted information, misled, and/or endeavored to do so as it relates to every aspect of the KMC and his knowledge and role in it." (Id. at 17). In its view, "in the context of the Obstruction of Justice charges set forth in Counts 27 and 28, [Scanlon] need only look to the allegations of the indictment and compare it to what he said on the topic before the Grand Jury in order to adequately prepare his defense." (Id. ).
IV. Summary of Scanlon's Response
Scanlon argues that the Government should particularize both the grand jury testimony alleged to be false and evasive, as well as the FBI statements alleged to establish his mens rea. (Dkt. 744).
Scanlon invites the Court to reconsider its prior Decision and Order, contending that the Court erred when it concluded that the Indictment limits the allegedly false and evasive testimony to ten topics that are "reasonably specific and defined" and that Scanlon's grand jury transcripts do not contain "a voluminous amount of testimony." (Id. at 6 (quoting Dkt. 691 at 19, 21-22)). Scanlon contends that, while many of the ten categories are fairly precise, "any limits they might have established are exploded by the first and tenth categories-Defendant Scanlon's 'knowledge of the Kingsmen Motorcycle Club' and 'his role in the Kingsmen Motorcycle Club.' " (Id. at 7 (quoting Dkt. 33 at 48-49)). In his view, "these two categories sweep in every topic covered in Defendant Scanlon's grand jury testimony," and their inclusion in the ten categories means that there is "no meaningful limit" on the grand jury testimony on which Counts 27 and 28 are based. (Id. ). Next, Scanlon argues that the preparation of his defense to these counts entails more than reading his grand jury testimony; he asserts that he would have to review the entirety of the discovery material to determine which statements serve as the basis for the counts. Scanlon asserts, in short, that "he could only guess at what he was looking for." (Id. at 9).
Scanlon further argues that the Government "does not give a straight answer" as to whether the Government relies on statements Scanlon made to the FBI in order to support the charges in Counts 27 and 28. (Id. at 10). He points out that the Government claims that the FBI statements are not the obstructive conduct charged in Counts 27 and 28, yet intends to rely on them as proof of mens rea and Scanlon's awareness of an official proceeding. (Id. ). He argues that the Court should also require the Government to particularize each FBI statement that it intends to use to support the charges in Counts 27 and 28, the context for each statement, and *584 the question that prompted it. (Id. at 10-12).
V. Particularization of Counts 27 and 28 is Not Warranted
Upon review of the information available to Scanlon-including the Indictment, the transcripts of his grand jury testimony, and discovery such as FBI 302 documenting statements, cell phone records, and historical cell tower mapping-the Court concludes that particularization of Counts 27 and 28 is not warranted.
As the Court observed in its prior Decision and Order, the Indictment in this case provides a list of ten topics about which Scanlon allegedly testified falsely and/or evasively. (Dkt. 33 at 48-49). The Government's supplemental submission, summarized above, sheds additional light on these ten topics, as it provides examples of the allegedly false and/or evasive testimony for each topic, along with citations to the grand jury transcripts, Indictment, and other discovery materials that should inform Scanlon about the nature of the charges. (See Dkt. 719). In combination, the Indictment, grand jury testimony, discovery materials, and the Government's supplemental submission provide Scanlon enough information to prepare a defense to the charges he faces in Counts 27 and 28. See United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) ("A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."); see also United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." (citation omitted))
Scanlon has not demonstrated how the information set forth in the sources cited by the Government does not enable him to prepare a defense. He concedes that the "grand jury testimony is itself not voluminous" but argues that "he must do more than read the transcripts to know what testimony is at issue in Counts 27 and 28." (Dkt. 744 at 7). Yet, the relevant question when deciding whether to order a bill of particulars is whether it is "necessary for the defense, not whether it would aid the defendant in his preparation." United States v. Murgio, 209 F.Supp.3d 698, 721 (S.D.N.Y. 2016) (quoting United States v. Trippe, 171 F.Supp.2d 230, 240 (S.D.N.Y. 2001) ). It may be helpful for the Government to identify each statement made by Scanlon to the grand jury that serves as the basis for the charges in Counts 27 and 28, but such identification is not necessary for Scanlon's defense. Indeed, as the Court observed previously, the Indictment need not set out the false statements on which the alleged obstruction is based. See United States v. Upton, 856 F.Supp. 727, 753-54 (E.D.N.Y. 1994) (denying requested particularization for obstruction of justice count based upon alleged false testimony before federal agency, where the indictment set forth the description of the alleged false testimony (i.e. testifying falsely regarding knowledge of conspiracy to falsify maintenance records) and defendants were in possession of transcripts containing alleged false testimony); United States v. Schwimmer, 649 F.Supp. 544, 547 (E.D.N.Y. 1986) (denying motion to dismiss obstruction of justice count and, with one exception, request for further particularization).
Further, the Government has now clarified that the obstructive conduct in Counts 27 and 28 is Scanlon's grand jury testimony, not statements that he made to the *585 FBI. (Dkt. 719 at 2-3). Scanlon argues that the Government's response is misleading (Dkt. 744 at 10) based on its representation that it does not rely on Scanlon's statements to the FBI as the basis for either count, but that it does intend to use the statements to the FBI as proof of Scanlon's "awareness of the official proceeding, and [his] 'corrupt' mens rea. " (Dkt. 719 at 3). For that reason, Scanlon also requests particularization of the FBI statements. (Dkt. 744 at 6-12). However, the Court sees no reason why the Government may not offer a defendant's prior statements to the FBI as proof of the defendant's awareness of the official proceeding and "corrupt mens rea ," and Scanlon points to no authority that holds that it would be impermissible for the Government to do so. Thus, the Court finds that Scanlon's request for particularization of the FBI statements is unpersuasive. Based on the above, ordering particularization in the context of this case for these counts would be far beyond the appropriate scope of a bill of particulars.
CONCLUSION
For the foregoing reasons, Scanlon's motion for a bill of particulars (Dkt. 385) is denied.
SO ORDERED.

Four Defendants-Edgar Dekay (Dkt. 412), Thomas Koszuta (Dkt. 296), Emmett Green (Dkt. 257), and Ryan Myrtle (Dkt. 330)-have pleaded guilty.