UNITED STATES of America, Plaintiff,

v.

Deric FRANK, Defendant.

No. 97 CR 269(DLC).

United States District Court,
S.D. New York.

May 26, 1998.

Mary Jo White, U.S. Attorney, New York City, John Hillebrecht, Kerry Lawrence, Assistant U.S. Attorneys, for U.S.

Leonard Joy, Jonathan Bach, Legal Aid Society, Federal Defender Division, New York City, Kevin McNally, McNally & Robinson, Frankfort, KY, for Defendant.

## OPINION

COTE, District Judge.

Defendant Deric Frank moved to compel production by May 1, 1998, of certain discovery materials in this death penalty prosecution. The selection of the jury who will try this case is scheduled to begin on June 4, 1998, with the submission of a written ques-tionnaire to members of the venire; the presentation of evidence is scheduled to begin on June 15. At conferences with the parties on March 12 and April 29, 1998, the Court ruled on the defendant's motion, essentially denying it. This Opinion explains the basis for the Court's ruling.

More specifically, in a January 8, 1998 letter, the Government set forth its position regarding the schedule for production of certain discovery materials. By that time, the Government already had provided what it describes as "voluminous" amounts of material in response to prior defense requests. Frank accepted some of the Government's proposals for the production of additional information but, as described below, moved for the Court to advance the disclosure of other materials. This Opinion will address in turn Frank's requests for specific types of materials.

Finally, in a May 4, 1998 letter and at a May 7, 1998 conference, Frank accused the Government of violating its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In a letter of May 14, 1998, Frank elaborated on his view of the Government's Brady obligations in a death penalty prosecution. The Government responded with a letter of May 17 and two letters of May 20, one addressed to the Court and one addressed to Frank's counsel. This Opinion will explain the basis for the Court's finding that there has been no Brady violation by the Government.

### A. *Production of Witness List; Brady, Giglio, and Jencks Material*

■ The Government and defense counsel agreed that the Government would produce by May 1, 1998, with one exception, a list of its witnesses for both the liability and penalty phases, as well as the materials related to these witnesses' testimony, that is, the impeachment material that it must produce pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("Giglio material"), and the prior statements of witnesses that it must produce pursuant to 18 U.S.C. § 3500 ("3500 material").[1] The

---

1. Although the Government and the defendant have for the most part agreed to a schedule for

one exception involves the information with respect to witnesses for whom the Government has safety concerns, which the Government proposed to produce on June 3, 1998,[2] unless it made a motion beforehand to delay production further. The parties are in agreement about the Government's obligation to produce without delay any exculpatory information, pursuant to *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 ("Brady material"). The Government had indicated, however, that it is unaware of any such information regarding Frank. The Court has ordered the Government to provide Frank with all exculpatory information of which it does become aware promptly after learning of it. Pursuant to *Brady*, and because he will have an opportunity to submit to the jury information in mitigation of the imposition of the death penalty should he be found guilty of the capital crime of kidnapping in which death results, Frank also has requested disclosure of any statements regarding his character that could be interpreted as favorable to him. The Government agreed on March 12 to disclose such statements, and did so through a letter of March 16.

Frank subsequently moved to compel the Government to disclose by May 1 its complete list of witnesses as well as all of the 3500 material and Giglio material. To assuage the Government's concerns regarding the safety of certain witnesses, defense counsel proposed that the identity of those witnesses, along with their 3500 material and Giglio material, be disclosed to defense counsel alone; and counsel have further represented that this information would be shared with neither the defendant nor his family until June 3 or until they have obtained permission from the Court to remove any restrictions on the use of the material, whichever date comes first. Defense counsel anticipates that an application to remove restrictions most likely would be made when counsel can represent to the Court that they have independently learned the identity of a Government witness.

With respect to the provision of a complete witness list, Title 18 of the United States Code, Section 3432 ("Section 3432") states in pertinent part that a defendant in a capital case must be furnished "three entire days before commencement of trial" with a list of the witnesses at trial "stating the place of abode of each ... witness," unless "the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." 18 U.S.C. § 3432 (1997). Thus, with respect to those witnesses for whom the Government establishes a basis for concern regarding their safety, the statute allows for disclosure of their identity even later than three days before trial.

As a general matter, a defendant has no constitutional right to receive either Brady or Giglio material prior to trial. *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n. 1 (2d Cir.1974). As the Supreme Court observed in *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), "[t]here is no general constitutional right to discovery in a criminal case and *Brady* did not create one...." *Id.* at 559, 97 S.Ct. 837. *See also Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Percevault*, 490 F.2d 126, 131–32 (2d Cir.1974) (holding that court has no power to compel disclosure of 3500 material prior to time mandated by statute). Exculpatory material must be disclosed, however, in sufficient time to permit a defendant to make effective use of it at trial, thus potentially necessitating pre-trial disclosure, depending on the nature of the material. *See, e.g., Grant v. Alldredge*, 498 F.2d 376, 382,

---

the production of Giglio material, Frank nonetheless also argues that Giglio material should be treated like all other Brady material and disclosed to him as soon as it comes into the Government's possession. Practically speaking, such a principle is difficult to apply until the Government has decided on its witnesses for trial. The practice also would be at odds with 18 U.S.C. § 3432, which requires production of a witness list only three days prior to trial. As explained below, there is no legal requirement for such early disclosure.

**2.** At the time that the Government proposed the June 3 date for production of certain discovery materials, the parties anticipated that the selection of the jury would begin on June 10, 1998, and that the presentation of evidence would begin five days later on June 15.

383 n. 7 (2d Cir.1974). As noted, the Court has ordered that Brady material be disclosed promptly after it comes to the Government's attention, inasmuch as the defendant may need to undertake an investigation to develop and present effectively the exculpatory information. Giglio material falls under the umbrella of the Brady rule because impeachment material directly affects the credibility of a witness and the "reliability of a given witness may well be determinative of guilt or innocence." *Giglio,* 405 U.S. at 154, 92 S.Ct. 763 (internal quotation omitted). The issue of when Giglio material should be disclosed, however, must be analyzed separately. Provided that the defendant has sufficient time after receipt of Giglio material to use it effectively at trial, there is no violation of the defendant's rights from deferring production of this material until closer to the time of the witnesses' testimony. Thus, while the requirements of due process underlie both the *Brady* doctrine and its offspring, including *Giglio,* the very nature of Giglio material dictates a different timetable for its effective use.

As a consequence, in cases *not* involving the death penalty, courts have approved disclosure of Giglio material on the day that a witness testifies. *See, e.g., United States v. Higgs,* 713 F.2d 39, 44 (3d Cir.1983); *United States v. Aguirre–Parra,* 763 F.Supp. 1208, 1216 (S.D.N.Y.1991) (to be produced with 3500 material); *United States v. Ruiz,* 702 F.Supp. 1066, 1069–70 (S.D.N.Y.1989), *aff'd,* 894 F.2d 501 (2d Cir.1990) (approving Government agreement to provide impeachment material along with 3500 material on day before witness testifies); *United States v. Biaggi,* 675 F.Supp. 790, 811–12 (S.D.N.Y. 1987) (same, although noting that the Government had already begun disclosure of prior or bad acts of several key witnesses). In a death penalty prosecution, one court has ruled that production of Giglio material three business days before jury selection gave the defendant "ample" opportunity to prepare for cross examination. *United States v. Beckford,* 962 F.Supp. 780, 788 (E.D.Va. 1997). That holding follows the structure of Section 3432, which does not require the Government to produce a list of its witnesses until three days before trial. *See also United States v. Storey* 956 F.Supp. 934, 938–39 (D.Kan.1997) (3500 material provided seven days before trial); *United States v. Walker,* 910 F.Supp. 837, 860 (N.D.N.Y.1995) (reserving on whether disclosure of witness list could be delayed until trial began, but denying defendant's motion for list earlier than required by Section 3432); *United States v. Nguyen,* 928 F.Supp. 1525, 1551 (D.Kan. 1996) (denying defendant's motion for disclosure of witness list earlier than required by Section 3432). *But see United States v. McVeigh,* 923 F.Supp. 1310, 1315 (D.Col. 1996) (ruling, after finding that Giglio material was required to be disclosed on same schedule as other Brady material, that all exculpatory or impeaching witness statements be immediately produced).[3]

■■■ Pursuant to the agreement of the parties, the Government has made an *ex parte* submission in a letter of April 13 to support its contention that disclosure of the identity of six witnesses will create a risk for their safety. The April 13 letter describes the defendant's co-conspirators, all of whom are at large, and its basis for believing that the co-conspirators present a serious risk of danger to the six witnesses. I find that there is a reasonable basis to believe that disclosure of the identity of these witnesses will present a serious risk to their safety and to the integrity of the trial process. As a consequence, I have not required that the Government identify these six witnesses or produce their Giglio or 3500 material on May 1. I will require, however, that the identity of these witnesses and their Giglio and 3500 material be produced on May 29, 1998, four

---

**3.** The defendant relies in part on an unpublished opinion in *United States v. Rosado–Rosario,* No. 97–049 (D.P.R. Aug.1, 1997), which required the Government to produce at an early stage in the litigation all Giglio and 3500 material for its witnesses so that the defendant could effectively argue before the Attorney General of the United States against the Government seeking the death penalty. It appears that the impeachment material in that case principally related to incarcerated co-conspirators with whom the Government had entered into cooperation agreements and who had been relocated within the prison system to secure their safety. This ruling appears to be against the weight of authority on this issue.

business days before the venire will arrive to fill out their written questionnaires and over two weeks before the presentation of evidence begins. Disclosure on May 29 will comply with the disclosure requirements of Section 3432 and will provide the defendant with more than sufficient time to prepare to examine these witnesses at trial. Should the Government seek a delay in production of such material beyond May 29, it must make a separate written application to the Court.[4]

Although the Court has every confidence in defense counsel and the reliability of their representations to the Court, counsel's proposal for earlier disclosure of this information is fraught with risk and will be difficult to administer. Defense counsel will not be able to undertake any investigation of the witnesses without placing those witnesses at risk. Given all of these circumstances, and balancing Frank's need for the material, the nature of the testimony to be given by these witnesses, the role of this testimony in light of the nature of the Government's evidence as a whole,[5] and the risk to the witnesses, I deny the motion to compel.[6] *See generally Beckford,* 962 F.Supp. at 793.

### B. *Alleged Violations of Brady Obligations*

After reviewing the 3500 material received on May 1, for approximately 84 potential witnesses, Frank complained that the Government had violated its Brady obligations. In a letter of May 4, Frank asserted that the Government had a duty to disclose the statements of witnesses that place Frank in Norwalk, Connecticut at his parents' house on the morning of March 11, the morning when the victim allegedly was kidnapped from her place of employment in Stamford, Connecticut and transported to New York and killed.[7] At the May 7 conference, Frank added four additional allegations of Brady violations. Frank urged that the Government had an obligation to disclose: (1) that a witness interviewed by the Government asserted that there had been a conspiracy to scare but not to kill the victim; (2) that Frank had paid the person who lit the fire that burned the victim to death, but did not light the fire himself; (3) that on March 9 Frank and the victim had spent a peaceful hour together in the victim's apartment; and (4) that the dog "Vinnie" who signaled the presence of an accelerant on Frank's shoes found during a search of his apartment did not "alert" to the presence of an accelerant when taken to cars involved in this case and on a prior occasion in an unrelated case "alerted" to the presence of an accelerant which a laboratory could not confirm.

Frank contends that the Brady doctrine requires disclosure of a witness statement even when the information is within the personal knowledge of the defendant. Further, he argues that the Government's obligation of disclosure exists even where the Government is aware that the defendant knows of the existence of the witness and the substance of their knowledge. Frank explains that it is the fact that the witness has conveyed the information to the Government that is material. Finally, he argues that the Government's pre-trial disclosure obligation

---

4. The Government has already addressed in an *ex parte* submission dated May 4 its position on an issue raised with counsel at the April 29 conference, namely, whether the information contained in footnote 1 to the April 13 letter is Brady material that should be disclosed promptly to defense counsel. The Government took the position in the May 4 letter that the information in question is not Brady material. The Court agrees that the information indeed is not exculpatory and need not be disclosed at this time.

5. The Government's evidence includes forensic evidence linking the defendant to the victim on the day of her murder and to the scene of the crime. The defendant has not challenged the reliability of this evidence through pre-trial motions.

6. The parties also have reached agreement regarding disclosure of the witnesses' "place of abode," which the Government is required to provide pursuant to Section 3432. Although some courts have interpreted "place of abode" to refer to a witness' township of residence, and not address, see, e.g., *Walker,* 910 F.Supp. at 860–61, the Government has agreed in this case to provide the witnesses' actual addresses, unless it makes an application to the Court, and the Court agrees, that there is a sufficient basis to believe that such a disclosure would jeopardize the witnesses' safety.

7. Members of Frank's family contend that he was with them at the family home early on the morning of the kidnapping.

is broader than the obligation described in cases applying a Brady analysis to post-conviction claims.

▪ The Government's obligations under *Brady* apply to evidence that is material either to guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194; *United States v. Zackson*, 6 F.3d 911, 917 (2d Cir.1993). Consequently, in a death penalty prosecution, the Brady obligation requires the Government to disclose material information that exculpates the defendant of the crime and that would be material to the defendant's presentation of factors mitigating against a sentence of death. *See generally Storey*, 956 F.Supp. at 939–40 (discussing application of *Brady* to capital sentencing proceeding); *cf. Neelley v. Alabama*, 488 U.S. 1020, 109 S.Ct. 821, 102 L.Ed.2d 810 (1989) (Marshall, J., dissenting from denial of certiorari) (noting absence of Supreme Court authority on applicable standard for reviewing *Brady* violations in the sentencing phase of capital trial).

▪ As explained by the Court in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985),

> evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Id.* at 682, 105 S.Ct. 3375. *See also Kyles v. Whitley*, 514 U.S. 419, 434–37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Zagari*, 111 F.3d 307, 319–20 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 445, 139 L.Ed.2d 381 (1997); *United States v. Gonzalez*, 110 F.3d 936, 943–44 (2d Cir.1997); *Tinsley v. Kuhlmann*, 973 F.2d 163, 166 (2d Cir.1992). Nonetheless, a prudent prosecutor will be quick to disclose any information that tends to exculpate the defendant. After all, as the representative of the Government, the prosecutor's task is not to win a case, but to see that justice is done. *Berger v. United*

*States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). As significantly, generous disclosure of information helpful to the defendant will increase confidence in the outcome of the trial. *Kyles*, 514 U.S. at 439, 115 S.Ct. 1555. Evidence, even if exculpatory and material, is not required to be disclosed, however, if the defendant knows or should have known of "the essential facts permitting him to take advantage of any exculpatory evidence." *Zackson*, 6 F.3d at 918 (internal quotation omitted). *See also Zagari*, 111 F.3d at 320; *Gonzalez*, 110 F.3d at 944. Thus, the Government is under no obligation to disclose its investigative files simply because they contain information which could assist the defendant. *Zackson*, 6 F.3d at 918; *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir.1982). *See also United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Government is required, however, to disclose sufficient information to the defendant to insure that the defendant will not be denied access to exculpatory evidence known only to the Government. *LeRoy*, 687 F.2d at 619. *See also Tate v. Wood*, 963 F.2d 20, 25 (2d Cir.1992). Consequently, the Government may fulfill its Brady obligation by directing the defendant's attention to witnesses who may have exculpatory evidence. Once the defendant is made aware of the existence of such witnesses, he may attempt to interview them to "ascertain the substance of their prospective testimony," or subpoena them if the Government does not intend to call them as witnesses at trial. *United States v. Ruggiero*, 472 F.2d 599, 605 (2d Cir.1973).

Applying these principles, the defendant has not established that the Government has engaged in any violation of its Brady obligations.[8] Putting aside for a moment the allegations regarding the dog "Vinnie," Frank does not contend that he was unaware of any of the other four pieces of information or even of the identity of the witnesses with that information. There was no requirement, therefore, that the Government dis-

---

8. Frank apparently has withdrawn any claim that there has actually been a Brady violation. Although invited during the May 7 conference by the Court to address in writing any instances in which he believed there had been a violation,

Frank confined his letter of May 14 to a discussion of the general principle that the Government is required to disclose information already known to a defendant.

close this information. In any event, the Government did disclose this information through the May 1 production of 3500 material and through its letters of May 17 and May 20. In those letters, the Government directs Frank's attention to certain witnesses and briefly describes the information they possess that, under the most liberal construction of Brady, may be exculpatory.

As far as the dog "Vinnie" is concerned, Frank has provided no support for his contention that the dog's failure to alert to the presence of accelerant—when shown cars as to which there has been no allegation that they contained gasoline—is Brady material. Vinnie's 3500 material has described those instances in which Vinnie was used in this investigation and nothing more was required. Moreover, the defendant is aware that on a prior occasion the laboratory did not confirm the presence of an accelerant, although Vinnie's response indicated its presence, because the Government provided such notice to the defendant. Further evidence of this prior incident, which is more properly characterized as Giglio material, will be provided to the extent it can be identified and is available. The defendant has already had an opportunity to interview Vinnie's handler to learn all that he can remember about the incident. Again, the appropriate disclosure has been made.

■ While there is no basis to believe that the Government has violated its Brady obligations, in an excess of caution that is appropriate given the gravity of this case, I will nonetheless grant Frank's request that the Court conduct an *in camera* examination of those Government reports that have not yet been or will not be produced to the defendant as part of the pre-trial discovery.

### C. *Co-conspirators*

Frank also moved for the Government to produce by May 1 detailed information regarding his alleged co-conspirators. The Government agreed to provide much of the information sought, including photo arrays containing these individuals' photographs that the Government has used during its investigation of this case. The Government sought to delay production of this information, however, until May 26. At the conference on March 12, the Court ordered the Government to disclose promptly the identity of the defendant's alleged co-conspirators in the crimes charged in the indictment. The only remaining issue of dispute, therefore, is the timing of the disclosures to which the parties have agreed.

■ The Government resists early disclosure of co-conspirator information on the grounds that it may lead to the flight of the co-conspirators and increase the risk of danger to those witnesses whose identity will be clear when the information sought is disclosed. Pursuant to the Court's order, the Government has already identified the alleged co-conspirators. As already noted, the danger to witnesses in this case is, in the Court's view, real and substantial. The Court concludes, therefore, that the production of further information regarding Frank's co-conspirators may wait until May 26. Production on May 26 will give Frank the information he seeks approximately three weeks before the first witness is called at trial. Accordingly, Frank's motion for disclosure of further information before May 26 is denied.

### D. *Information regarding the Aggravating Factors*

The parties agreed that the Government would provide the defendant with a "basic outline" of the evidence it intends to offer regarding the aggravating factors. In a letter of May 15, the Government did so. This agreement rendered moot the defendant's request for a bill of particulars regarding the aggravating factors.

\* \* \* \* \* \*

In sum, the Court denies the defendant's motion to compel early production of certain discovery materials. The Court finds that the Government has consistently honored its obligations under *Brady v. Maryland* to turn over exculpatory material to the defendant and that there is no outstanding Brady material that has not been disclosed to the defendant. Nonetheless, the Court will examine *in camera* the Government reports that will not be provided to the defendant in pre-trial discovery for the existence of any additional

Brady material. In addition, the Court finds that there is a real safety risk with respect to certain of the Government's witnesses once their identities are disclosed. Accordingly, the Court does not compel the Government to disclose the identities of these witnesses before May 29, 1998. Finally, the Court does not require the Government to turn over further information regarding Frank's co-conspirators in the crimes charged in the indictment before May 26, 1998. The Court finds that production of the information according to the aforementioned schedule will provide Frank with a sufficient opportunity to incorporate the information, where appropriate, into his defense, and simultaneously will help protect the safety of witnesses and the integrity of the trial process.

SO ORDERED.