**Gregory Lenoir ALLMAN, Jaimoe f/k/a Jai Johnny Johanson, and Claude Hudson Trucks, Together Professionally Known as the "Allman Brothers Band", Plaintiffs,**

v.

**UMG RECORDINGS, A Delaware Corporation; and Polygram Records, Inc., A Delaware Corporation, Defendants.**

No. 06 Civ 8327.

United States District Court, S.D. New York.

Jan. 10, 2008.

Steven Michael Hayes, Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP, New York, NY, for Plaintiffs.

Andrew Harrison Bart, Carletta Flora Higginson, Jenner & Block LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Gregory Lenoir Allman, Jaimoe, formerly known as Jai Johnny Johanson, and Claude Hudson Trucks, together professionally known as the Allman Brothers Band (collectively, "Plaintiffs"), brought this action in New York State Supreme Court against defendants UMG Recordings, Inc. (incorrectly sued as "UMG Recordings"), formerly known as Polygram Records, Inc. ("UMG"). Defendants removed the case to this Court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. Plaintiffs' complaint alleges that UMG breached its contract with Plaintiffs by failing to pay royalty sums owed to Plaintiffs for the period from January 1, 2000 through December 31, 2003 ("Relevant Time Period"). UMG moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), asserting that Plaintiffs' claims are time-barred. For the reasons discussed below, UMG's motion for summary judgment is GRANTED.

## I. BACKGROUND[1]

Plaintiffs are recording artists and members of the Allman Brothers Band. UMG,

---

**1.** The factual summary that follows derives primarily from the Complaint, dated September 29, 2006 ("Compl."); Declaration of Andrew H. Bart, dated June 22, 2007; UMG's Memorandum of Law in Support of Its Motion for Summary Judgment, dated June 22, 2007; Plaintiffs' Memorandum of Law in Opposition to UMG's Motion for Summary Judgment, dated July 24, 2007; Declaration of Matthew Hurewitz, dated July 20, 2007; Dec-

through a network of subsidiaries and joint ventures, develops, markets, and distributes recorded music. *See* Overview: Universal Music Group, *available at* http://new.umusic.com/Overview.aspx (last visited Jan. 8, 2008). Plaintiffs' relationship with UMG is governed by two recording agreements, which were entered into between Plaintiffs and Polygram Records, Inc. on January 1, 1985 ("1985 Agreement") and January 1, 1994 ("1994 Agreement") (collectively, the "Agreements"). The 1985 Agreement was incorporated by reference into the 1994 Agreement.

Under the 1985 Agreement, UMG is required to render semiannual royalty accounting statements to Plaintiffs. Pursuant to the 1985 Agreement, all royalty statements rendered by UMG to Plaintiffs are binding upon Plaintiffs and not subject to objection by Plaintiffs "for any reason unless specific objection, in writing, stating the basis thereof, is given to UMG within two (2) years from the date rendered" ("Objection Provision"). (1985 Agreement ¶ 4.03, attached as Ex. A to Compl.) The 1985 Agreement also states that Plaintiffs "will not have the right to bring an action against [UMG] in connection with any royalty accounting or payments . . . unless [Plaintiffs] commence[ ] the suit within three (3) years from the date such statement of accounting for royalties . . . was rendered" ("Limitation Provision") (collectively, the Objection and Limitation Provisions are referred to herein as the "Time Provisions"). (*Id.* at ¶ 4.05.)

UMG, pursuant to the Agreements, rendered timely royalty accounting statements during the Relevant Time Period on September 30, 2001 ("Statement 1");

March 31, 2002 ("Statement 2"); September 30, 2002 ("Statement 3"); March 31, 2003 ("Statement 4"); September 30, 2003 ("Statement 5"); and March 31, 2004 ("Statement 6") (collectively, the "Statements"). Plaintiffs sent a letter dated March 29, 2004 ("First Objection Letter") to UMG, listing fifteen bases for its objection to Statements 1 and 2.

Paragraph 4.04 of the 1985 Agreement ("Audit Provision") sets forth Plaintiffs' rights with respect to auditing the royalty statements. Plaintiffs, relying on the Audit Provision and without objection from UMG, conducted an audit of the Statements. Plaintiffs assert that, due in part to UMG's delay in providing requested documentation, their audit took twenty months and cost $22,000. Plaintiffs submitted its audit and demanded payment on June 21, 2006, but UMG refused to pay the amount claimed.

Plaintiffs sent a letter dated June 19, 2006 to UMG, requesting a tolling agreement for claims relating to the Statements. UMG, however, did not agree to Plaintiffs' request.

Plaintiffs objected to statements 3–6 by a letter dated July 18, 2006 ("Second Objection Letter"). On September 29, 2006, Plaintiffs commenced this action for breach of contract premised solely on the Statements.

## II. DISCUSSION

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most

laration of Gerald Weiner, dated July 24, 2007; UMG's Reply Memorandum in Support of Its Motion for Summary Judgment, dated August 3, 2007; UMG's Local Rule 56.1 Statement of Undisputed Pacts, dated June 22, 2007; Plaintiffs' Response to UMG's Local Rule 56.1 Statement of Undisputed Facts, dated July 24, 2007; UMG's Reply to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts, dated August 3, 2007. Except where specifically referenced, no further citation to these sources will be made.

favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994).

## B. *BREACH OF CONTRACT*

■ Under New York law, when contract language is unambiguous, its plain meaning should be enforced. *See, e.g., Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.") (citations omitted); *W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639, 642 (1990) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."). Applying these principles, the Court concludes that the Time Provisions were valid and enforceable, and that Plaintiffs did not comply with both provisions for any of the Statements.

### 1. *Application of the Objection Provision*

Courts applying New York law routinely uphold the enforceability of contractual incontestability provisions in recording agreements similar to the Objection Provision. In *Miller v. Columbia Records,* 70 A.D.2d 517, 415 N.Y.S.2d 869 (1979), the plaintiff brought a breach of contract claim against the defendant recording company. The defendant, relying the contract's incontestability provision, moved for partial summary judgment. The provision stated that "all royalty statements rendered by defendant to plaintiff 'shall be binding upon [plaintiff] and not subject to any objection by [plaintiff] for any reason unless specific objection in writing, stating the basis thereof, is given to [defendant] within one year from the date rendered.' " *Id.* at 870–71. The court found that "[t]his provision [was] binding and bar[red] all claims for any period antedating one year before rendition of each statement" because "[o]therwise, the contract would be without purpose or effect." *Id.* at 871 (citation and quotation marks omitted).

Other courts applying New York law have similarly enforced agreements containing incontestability clauses. *See Franconero v. Universal Music Group,* No. 02 Civ.1963, 2002 WL 31682648, at *1–3 (S.D.N.Y. Nov. 27, 2002) (finding that plaintiff was barred from seeking discovery of documents that were drafted prior to the contract's two-year incontestability clause); *see also Berkshire Life Ins. Co. v. Fernandez,* 124 A.D.2d 120, 511 N.Y.S.2d 348, 350 (1987) (stating that within life insurance policies, "[i]t is now well settled in New York that an incontestability clause is in the nature of, and serves a similar purpose as a Statute of Limitations.").

The 1985 Agreement's Objection Provision is an enforceable incontestability provision. Similar to the incontestability provision in *Miller v. Columbia Records,* the Objection Provision clearly and unambigu-

ously states that all royalty statements rendered by UMG to Plaintiffs are binding upon Plaintiffs and not subject to any objection by Plaintiffs "for any reason unless specific objection, in writing, stating the basis thereof, is given to UMG within two (2) years from the date rendered." (1985 Agreement ¶ 4.03, attached as Ex. A to Compl.)

Plaintiffs, through their March 29, 2004 First Objection Letter, assert that they objected to Statements 1 and 2. UMG rendered Statement 1 on September 30, 2001, meaning that for Plaintiffs' objection to be timely under Paragraph 4.03 of the 1985 Agreement, they were required to object to Statement 1 by September 30, 2003. UMG rendered Statement 2 on March 31, 2002, meaning that for Plaintiffs' objection to be timely, they were required to object to Statement 2 by March 31, 2004. Accordingly, Plaintiffs' First Objection Letter was untimely with respect to Statement 1 but timely with respect to Statement 2.

UMG asserts that the First Objection Letter is inadequate notice because it lacked the specificity required under the Objection Provision. Plaintiffs contend that the First Objection Letter, which listed fifteen points of objection to Statements 1 and 2, was sufficiently specific under the 1985 Agreement. Whether the First Objection Letter's content satisfies the Objection Provision's specificity requirement is a material issue of fact that would be inappropriate for the Court to determine on summary judgment.

Plaintiffs' Second Objection Letter, which was dated July 18, 2006 and contained objections to Statements 3–6, was untimely. Statement 6, the most recent statement, was rendered on March 31, 2004, meaning that, pursuant to the Objection Provision, Plaintiffs were required to object to Statement 6 by March 31, 2006. With respect to Statement 6, the Second Objection Letter was sent over three months after the Objection Provision's deadline. Thus, the Second Objection Letter was untimely for Statement 6 and all prior Statements, namely Statements 3–5.

Accordingly, Plaintiffs failed to object as required by Paragraph 4.03 of the 1985 Agreement to Statements 1, 3, 4, 5, and 6, and unless an exception applies, the Objection Provision serves as a complete bar to Plaintiffs' claims regarding those statements,

### 2. Application of the Limitation Provision

■ Courts applying New York law have routinely upheld the enforceability of contractual limitation periods similar to the Limitation Provision. Under New York Civil Procedure Law and Rules, "[a]n action ... must be commenced within the time specified in this article unless ... a shorter time is prescribed by written agreement." N.Y. C.P.L.R. § 201 (2003). Failure to comply with a contractual limitations period will subject the action to dismissal, absent proof that the limitations provision was obtained through fraud, duress, or other wrongdoing. See Van Loan v. Hartford Accident and Indem. Co., No. 05 Civ. 1326, 2006 WL 3782709, at *4 (S.D.N.Y. Dec.22, 2006) (finding the insurance policy's two-year limitation period valid and enforceable and dismissing plaintiff's claim because it was filed after the limitation period); Redington v. Hartford Accident and Indem. Co., 463 F.Supp. 83 (S.D.N.Y.1978) (holding that the two-year contract limitation period was reasonable even though the statute of limitations under New York law prescribed a six-year period for contract claims); Cab Assocs. v. City of New York, 32 A.D.3d 229, 820 N.Y.S.2d 21 (2006) (dismissing the contractor's damage claim as time barred and enforcing the contractual four-month limi-

tation period, rather than the general six-year statutory limitation period); *Neary v. Nationwide Mut. Fire Ins.*, 17 A.D.3d 331, 791 N.Y.S.2d 840 (2005) (reversing the lower court's denial of defendant's summary judgment motion because defendant sustained its initial burden of showing the action was commenced after the contractual limitation period and plaintiff failed to establish an exception to the limitations period); *H.P.S. Capitol, Inc. v. Mobil Oil Corp.*, 186 A.D.2d 98, 588 N.Y.S.2d 29, 30 (1992) (stating that the contractual limitation provisions prescribing shorter periods than the statute Of limitations "do[ ] not conflict with public policy but, in fact, 'more effectively secure[ ] the end sought to be attained by the statute of limitations'") (*quoting John J, Kassner & Co., v. City of New York*, 46 N.Y.2d 544, 415 N.Y.S.2d 785, 389 N.E.2d 99, 103 (1979)); *Diana Jewelers of Liverpool, Inc. v. A.D.T. Co.*, 167 A.D.2d 965, 562 N.Y.S.2d 305 (1990) ("[A] reasonable contractual shortening of the period of limitations is statutorily authorized [under C.P.L.R. § 201] and, absent a showing of fraud, duress or misrepresentation, will be upheld.") (citations omitted).

■ The 1985 Agreement's Limitation Provision is valid and enforceable. The Limitation Provision clearly and unequivocally states that Plaintiffs do not have the right to bring an action against UMG in connection with any royalty statements or payments due under the 1985 Agreement "unless [Plaintiffs] commence[ ] the suit within three (3) years from the date such statement of accounting for royalties or such payment was rendered." (1985 Agreement ¶ 4.05, attached as Ex. A to Compl.) The Court finds that, after reviewing the relevant case law, the Limitation Provision's three-year limitation period is reasonable and notes that Plaintiffs have not asserted that they entered into the Limitation Provision as a result of fraud, duress, or misrepresentation.

Plaintiffs instituted this action on September 29, 2006, and at that time, Plaintiffs, pursuant to the Limitation Provision, would be limited to initiating actions for royalty statements rendered between September 29, 2003 and September 29, 2006 ("Liability Period"). Only Statements 5 and 6, which UMG rendered on September 30, 2003 and March 31, 2004 respectively, were within the Liability period. However, liability for those statements was foreclosed by the Objection Provision for the reasons stated above. Plaintiffs failed to bring a timely action under the Limitation Provision with respect to Statements 1, 2, 3, and 4, and unless an exception applies, the 1985 Agreement serves as a complete bar to Plaintiffs' claims regarding those statements.

Accordingly, Plaintiffs are foreclosed under the Time Provisions from bringing an action with respect to any of the Statements.

### 3. *There Are No Applicable Exceptions to the Time Provisions*

■ Plaintiffs assert that UMG, by virtue of not objecting and thus "allowing" and "encouraging" Plaintiffs to incur $22,000 of expenses during a twenty-month audit of UMG's books and records, which was exacerbated by UMG's delay in producing documents (collectively, the "Estoppel Conduct"), has waived and/or is equitably estopped from relying on the Time Provisions. The Court is not persuaded that UMG has waived, or is estopped from relying on, the Time Provisions.

### a. *Waiver Does Not Apply*

■ Under New York law, waiver is the "intentional relinquishment of a known right and should not be lightly presumed." *Gilbert Frank Corp. v. Federal Ins. Co.*, 70

N.Y.2d 966, 525 N.Y.S.2d 793, 520 N.E.2d 512, 514 (1988). When establishing waiver of contractual limitation protections, a "plaintiff must present evidence from which the defendant's intent to relinquish the protection of the contractual limitations period can be reasonably inferred." *Enterprise Eng'g, Inc. v. Hartford Fire Ins. Co.*, No. 04 Civ. 5018 (DLC), 2004 WL 2997857, at *3 (S.D.N.Y. Dec. 23, 2004); *see also North Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 413 F.Supp.2d 295, 301 (S.D.N.Y.2006).

Assuming, as alleged by Plaintiffs, that UMG "allowed" and "encouraged" them to audit, Plaintiffs still have not shown that UMG intended to relinquish any of its rights under the Agreements. Under Paragraph 8.06 of the 1985 Agreement, "no modification, amendment, waiver, termination or discharge of [the 1985 Agreement] shall be binding unless confirmed by written instrument signed by the party to be charged" ("Waiver Provision"). Courts applying New York law have upheld the enforceability of similar waiver provisions. *See Bigda v. Fischbach Corp.*, 898 F.Supp. 1004, 1013 (S.D.N.Y.1995) (finding no waiver because the agreement contained a requirement that any waiver had to be in writing and defendant did not produce a written waiver); *see also Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir.1990) ("[A] written agreement that expressly states it can be modified only in writing cannot be modified orally."). Plaintiffs have not asserted that UMG signed any documents that would satisfy the Waiver Provision with respect to the Time Provisions. Accordingly, the Court finds that UMG did not waive its rights under the Time Provisions.

#### b. *Equitable Estoppel Does Not Apply*

■ Under "extraordinary circumstances," a plaintiff may equitably estop a defendant from asserting a time limitation defense. *See Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 119 (S.D.N.Y.1993) (*citing Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir.1986)). "[T]he doctrine of equitable estoppel is properly invoked only in cases 'where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit.'" *Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 337 (S.D.N.Y.2003) (*quoting Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir.1985)). In *Cerbone*, the Court offered as examples "cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Cerbone*, 768 F.2d at 50; *see also Satyam Imports, Inc. v. Underwriters at Lloyd's Via Marsh, S.A.*, No. 03 Civ. 4387 (GEL), 2003 WL 22349668, at *2–4 (S.D.N.Y. Oct. 14, 2003) (finding no estoppel in an insurance action where the defendant insurance company extensively and sluggishly investigated the plaintiff's claim because the plaintiff "alleg[ed] no words or conduct by [the defendant] that could reasonably be read by [the plaintiff] as indicating either that [the defendant] intended to satisfy the claim or that it would not assert the limitations defense."). To establish estoppel, a plaintiff must present evidence of affirmative misconduct or misrepresentation on the part of the defendant which can be said to have induced the reasonable reliance of the plaintiff in failing to timely commence an action. *See DeGori v. Long Island R.R.*, 202 A.D.2d 549, 610 N.Y.S.2d 815 (1994) (citations omitted).

■ Plaintiffs assert that UMG is equitably estopped from relying on the Time Provisions because they reasonably relied on UMG's Estoppel Conduct, which misled

and lulled Plaintiffs into filing an untimely suit. The Court concludes that Plaintiffs' reliance on UMG permitting the audit was unreasonable and is not persuaded that Plaintiffs' assertions rise to the level of extraordinary circumstances. Accordingly, UMG is not equitably estopped from asserting the Time Provisions as defenses to Plaintiffs' claims.

UMG's permitting Plaintiffs to conduct the audit, to the extent that Plaintiffs had a right to review UMG's books and records under the Audit Provision, did not reasonably mislead or lull Plaintiffs into filing an untimely action. Plaintiffs, pursuant to the 1985 Agreement's Audit Provision, had a right to audit UMG's books and records pertaining to particular Statements. Allowing Plaintiffs to rely on UMG's compliance with its contractual obligations as evidence that UMG is estopped from relying on the Time Provisions would create an unreasonable Catch–22, forcing UMG to either take steps towards prohibiting Plaintiffs' audit, which would open UMG to potential liability for contract breach, or allow the audit, however long it may extend, and be estopped from enforcing its rights under the Time Provisions. Plaintiffs and UMG entered into the Agreements at arm's length, and they did not include provisions which would toll the Time Provisions during an audit. UMG's "allowing" the audit to commence, to the extent that Plaintiffs had a right to review UMG's books and records under the Audit Provision, could not reasonably be interpreted by Plaintiffs as indicating that UMG would not assert its defenses under the Time Provisions.

Likewise, even assuming Plaintiffs' right to audit UMG's books and records expired with respect to certain Statements, UMG is not estopped from relying on the Time Provisions. Plaintiffs, who were represented by legal and audit professionals, are not strangers to protecting their legal rights against UMG and, in addition to this current action, have pursued legal actions against UMG and UMG affiliated companies in at least two other actions.[2] Plaintiffs have not alleged that UMG ever expressly assured them that it would forego the Time Provision defenses, and other than Plaintiffs' allegation that UMG permitted the audit to take place, Plaintiffs have not alleged any express promises or representations by UMG that would toll the Time Provisions. In fact, UMG expressly refused to sign the tolling agreement proposed by Plaintiffs' letter dated June 19, 2006. Even if Plaintiffs had no right under the Agreements to conduct the audit, it was unreasonable for Plaintiffs to rely on UMG's acquiescence to the audit as UMG foregoing its rights under the Time Provisions. Accordingly, Plaintiffs were not reasonably lulled or misled by UMG allowing Plaintiffs to audit, but rather, it was "incumbent on [Plaintiffs] to take timely action to protect its rights." *Satyam Imports*, 2003 WL 22349668, at *3.

Plaintiffs also assert, as part of their estoppel argument, that UMG delayed producing certain documents requested by Plaintiffs during the audit. The Court is not persuaded by Plaintiffs' argument. Even assuming that UMG purposely delayed producing documents and that this delay prolonged the audit, the fact that the audit took longer than it would have absent UMG's delay does not make Plaintiffs'

---

**2.** The first action was *Allman v. Capricorn Records, Inc.*, No. 98 CV 01078(NM), which was a Central District of California case alleging copyright infringement, and it was filed on February 13, 1998 and concluded on April 13, 2004. The second action was *Allman v. UMG Recordings, Inc.*, No. BC 250351, which was a Superior Court of California, County of Los Angeles, case, and it was filed on May 11, 2001 and concluded on February 14, 2003.

reliance any more reasonable. To invoke equitable estoppel, Plaintiffs must have known of their potential cause of action but reasonably failed to initiate suit because UMG affirmatively misled or lulled them into delaying commencement of a legal action. *See Helprin,* 277 F.Supp.2d at 337. The Audit Provision granted Plaintiffs a discretionary audit right, and they were not required to initiate or complete an audit prior to commencing a legal action. Plaintiffs have alleged nothing, including UMG's purported delay in disclosing particular documents, that reasonably would have induced Plaintiffs' reliance that UMG would forego its rights under the Time Provisions. UMG should not be equitably estopped from relying on the Time Provisions merely because Plaintiffs chose to commence a discretionary audit rather than a legal action.

It was incumbent on Plaintiffs to protect their rights by initiating a timely action, and UMG's Estoppel Conduct did not reasonably lull or mislead Plaintiffs into a false sense of security. Accordingly, UMG is not equitably estopped from relying on the Time Provisions as defenses to Plaintiffs' claims.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion for summary judgment (Docket No. 13) of defendant UMG Recordings, Inc. (incorrectly sued as "UMG Recordings"), formerly known as Polygram Records, Inc. is GRANTED, and it is further

**ORDERED** that the complaint of plaintiffs Gregory Lenoir Allman, Jaimoe, formerly known as Jai Johnny Johanson, and Claude Hudson Trucks, together professionally known as the Allman Brothers Band, is DISMISSED in its entirety.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**